IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOHN D. FLECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3071 |
| | ) | |
| J. ZEID LANGAN and R. IRWIN, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before this Court on Defendant Springfield Police Officers J. Zeid Langan and R. Irwin's Motion for Summary Judgment (d/e 50) (Motion). The Plaintiff John D. Fleck alleges that the Defendants violated his Fourth Amendment rights by using excessive force when they assisted in Fleck's arrest on September 2, 2006. The evidence presented shows that issues of fact exist regarding whether Langan and Irwin used excessive force. The Motion is therefore denied.

STATEMENT OF FACTS

The parties dispute many material facts in this case. For purposes of the Motion, the Court must view the evidence in the light most favorable

1

to Fleck.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The Court does so only for purposes of this Motion and acknowledges that the Defendants dispute many of the facts recited below.

On September 2, 2006, between 8:00 p.m. and 8:15 p.m., Sangamon County, Illinois, Deputy Sheriff James P. McNamara was patrolling in his squad car on Sangamon Avenue in the Springfield, Illinois, area.[1]  Fleck and two of his friends, Kim Peterman and Steve Smith, were riding motorcycles on Sangamon Avenue.  Deputy McNamara's radar unit clocked Fleck going 49 m.p.h. in a 30 m.p.h. speed zone.  McNamara activated his lights to make a traffic stop.  Fleck pulled into a parking lot on the south side of Sangamon Avenue and stopped.  McNamara pulled in after Fleck.  Fleck's friends stopped in the parking lot on the north side of Sangamon Avenue. Motion, Statement of Undisputed Facts, ¶¶ 5-9, 13.[2]

McNamara determined that Fleck had been drinking.  McNamara asked Fleck to submit to a field sobriety test.  Fleck initially agreed, but then refused to complete the test.  McNamara then placed Fleck under arrest.

---

[1] McNamara was originally named as a defendant in this action.  Fleck voluntarily dismissed his claims against McNamara.  Text Order entered July 16, 2009.

[2] Fleck does not dispute the Defendants' Statements of Undisputed Facts on which the Court relies.

2

Fleck resisted. McNamara sprayed Fleck with mace and called for assistance. McNamara sprayed Fleck with mace a second time, and Fleck then stopped resisting. McNamara placed Fleck across the hood of his car and handcuffed Fleck. Fleck was compliant with McNamara at this time. Motion, Statement of Undisputed Facts, ¶¶ 18-29, 32-38, 42-46; Motion, Exhibit A, Deposition of John Fleck, at 42, 94.

Shortly thereafter, eight or nine law enforcement officers, including the Defendants, arrived at the scene. Motion, Exhibit D, Deposition of Steven Smith, at 8. The officers, including the Defendants, threw Fleck to the ground more than once. Fleck Deposition, at 42, 44. While on the ground, the officers placed their knees on Fleck's neck, head, and left leg. Fleck did nothing to provoke these actions. Id., at 43-44.

The officers let Fleck get off the ground. The officers then took him to McNamara's squad car. The officers beat Fleck's head against the top of the squad car twice. Id., at 48-49. Fleck could not bend down to get into the squad car because the officers, including the Defendants, were all over him. He also could not see clearly because the mace had irritated his eyes. Fleck asked for some room so that he could bend down and get into the car. Id., at 49. In response the officers kicked Fleck's left leg ten to fifteen times

3

and hit him repeatedly with night sticks and billy clubs. <u>Fleck Deposition</u>, at 49-50; <u>Smith Deposition</u>, at 9, 16-17, 20; <u>Motion</u>, Exhibit C, <u>Deposition of Kimberly Peterman</u>, at 19, 29, 33. Fleck fell to the ground as a result of the beating and kicking. <u>Smith Deposition</u>, at 19. Fleck told the officers that he could not stand or walk. The officers told Fleck to shut up and that he would be beaten more if he opened his mouth. <u>Fleck Deposition</u>, at 51. Fleck was transported in a paddy wagon to the Sangamon County, Illinois, jail. <u>Id.</u>, at 50-51.

As a result of the beating, Fleck was diagnosed with a fracture of the lateral tibial plateau in his left leg, bone bruises, internal bleeding, a complete tear of the anterior cruciate ligament (ACL), and a complex tear of the posterior horn of the lateral meniscus in his left knee. One of Fleck's treating physicians stated that the damage to Fleck's left knee was permanent. <u>Plaintiff's Response to Motion for Summary Judgment (d/e 51)</u>, Exhibit A, <u>Deposition of Rodney Herrin, M.D.</u>, at 12-13, 65-66, 67, 68, 73, 80.

## ANALYSIS

Defendants Langan and Irwin now move for summary judgment. At summary judgment, the Defendants must present evidence that

4

demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Fleck. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants. Anderson, 477 U.S. at 255. Once the Defendants have met their burden, Fleck must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, the factual disputes preclude summary judgment.

Excessive force claims in the context of an arrest are analyzed under a standard of objective reasonableness under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). The Supreme Court stated that the finder of fact must evaluate the particular circumstances to determine the reasonableness of the force:

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.

Id., at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

5

In this case, the evidence, when viewed favorably to Fleck, shows that Langan and Irwin used excessive force. McNamara had already subdued Fleck with the mace. Fleck was compliant and was already handcuffed. Langan and Irwin arrived and, along with the other officers that arrived, threw Fleck to the ground twice; put their knees on his neck, head, and left leg; beat his head on the top of a squad car; and beat and kicked him until he fell to the ground and could not get up. According to Fleck, he was no longer resisting; he was handcuffed and compliant. Langan and Irwin dispute this version of the events, but those disputes only demonstrate that issues of fact exist. If the jury believes Fleck, the Defendants used excessive force.

The Defendants argue that Fleck's version of events is so contradicted by the other evidence that the Court should not accept his testimony for purposes of summary judgment. The Defendants cite Scott v. Harris for this proposition. Scott, 550 U.S. 372 (2007). In Scott, the incident in question was video taped, and the parties did not dispute the accuracy of the recording. Under those circumstances, the Supreme Court said that witness statements that completely contradicted the recording could be ignored. Id., at 380. No recording exists here. The Court, therefore, must

credit Fleck's version of the events. His version of the incident demonstrates that issues of fact exist.

The Defendants also argue that they are entitled to qualified immunity. A state official is entitled to qualified immunity at summary judgment unless the plaintiff can present evidence that: (1) the official's actions violated the plaintiff's rights, and (2) a reasonable state official would have known that the actions were unconstitutional in light of clearly established controlling authority. Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808, 818 (2009). As explained above, Fleck presented evidence that Langan and Irwin violated his rights. The only issue is whether Fleck presented evidence that the Defendants' actions were unconstitutional in light of clearly established controlling authority.

Fleck can show that the Defendants' actions were unconstitutional in light of clearly established controlling authority by:

> (1) pointing to a closely analogous case that established a right to be free from the type of force that police officers used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.

Chelios v. Heavener, 520 F.3d 678, 691 (7th Cir. 2008) (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996)). In this case, if Fleck is to be

7

believed, the force was so clearly excessive that Langan and Irwin would have known that they were violating Fleck's rights.  Fleck was handcuffed and blinded by mace, and he was complying with McNamara's directions.  Yet, Fleck states that these officers threw him to the ground twice, beat his head on the roof of a squad car twice, and kicked him and beat him so severely that he suffered a fracture, bruises, and tears of the meniscus and the ACL in his left knee.  Such a severe beating of a compliant handcuffed man already blinded by mace is plainly excessive.  The fact that the Defendants dispute Fleck's version of the events, again, only shows that the matter must go to trial.

THEREFORE, Defendants Langan and Irwin's Motion for Summary Judgment (d/e 50) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:  July 9, 2010

       FOR THE COURT:

                                s/ Jeanne E. Scott
                                JEANNE E. SCOTT
                                UNITED STATES DISTRICT JUDGE